## HENRY BEIDLER

v.

## CHARLES S. CRANE ET AL.

*Creditors' Bills to Reach Shares of Stock—Review of Evidence—Fraud.*

Upon creditors' bills filed to subject certain shares of stock in defendant corporations to the payment of certain judgments against one of the defendants, this court holds that the evidence supports the decree of the court below for the complainants, based on the fraudulent conveyance of certain letters patent.

[Opinion filed May 18, 1887.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. GEORGE W. STANFORD and D. W. MUNN, for appellant.

The court should have, by the decree, preferred the actual advances made by appellant on account of the patents. The

court should have protected Beidler in his actual · advances, and for the purpose of ascertaining the amount of such advances the court should have referred the case to the master to take proof on the specific question of how much and when Beidler had advanced money to Ellithorpe for account of these patents.   Clements v. Moore, 6 Wall. 312.

The patents having been assigned, the court had no power under the law to subject them to the payment of the debts of Ellithorpe; they could not be sold on execution while in his hands, and a sale of them by him would give the purchaser the title free of any claim in law or equity against Ellithorpe. Stevens v. Cady, 14 How. 529; Stevens v. Gladding, 17 How. 447; Patterson v. Kentucky, 7 U. S. 506; Ayer v. Murphy, 105 U. S. 129.

Messrs. John Lyle King and Henry T. Helm, for appellees.

McAllister, P. J.   The appellees having each in his own name recovered in a court of record judgment for a money indebtedness against A. C. Ellithorpe, and respectively exhausted his remedy at law upon the same, brought, in their separate right, creditors' bills in the court below against said Ellithorpe, Henry Beidler, the Ellithorpe Safety Air Cushion Company and the Ellithorpe Air Brake Company, for the purpose of subjecting shares of stock in said respective companies standing in the name of said Beidler to the payment of said several judgments.   The alleged grounds for such relief were : that Ellithorpe being the inventor, and as such, the owner of letters patent issued to him from the United States Patent Office for a certain air cushion to be applied to elevators in buildings, also another patent for an air brake for the same use, both being designed to promote safety and convenience in the construction and operation of such elevators and of great value—that Ellithorpe, being the owner of such valuable patents, but being indebted to the appellees at the time and insolvent, for the purpose of hindering, delaying and defrauding his creditors, assigned said patents to Beidler; that thereupon

Ellithorpe, with the concurrence of Beidler, caused said companies to be organized as corporations, had Beidler assign said patent for the air cushions to the Ellithorpe Safety Air Cushion Company and that for the air brake to the Air Brake Company aforesaid; that each patent was estimated as capital in the company to which it was so assigned; that the capital of each was divided into shares, the principal and substantial part of all which stood in Beidler's name, but were in fact held by him in secret trust for said Ellithorpe, who from the first and ever since, had the control of the business and took substantially all that was made by either company.

Answers and replications having been filed, all the causes, by the *tacit* if not the *express* consent of all parties contesting, including Beidler, were consolidated and heard as one cause, and a decree passed finding said assignment of patents fraudulent and void as to plaintiffs, subjecting said shares of stock to the paym'nt of said judgments, from which Beidler alone appealed to this court.

We have given the evidence in this case a very careful examination and think it sufficient to support the decree, but shall not enter upon the useless task of discussing it in detail. The record shows that the decree is based substantially and almost wholly upon the testimony of Ellithorpe and Beidler. Although they were first examined before a master, they were both afterward examined orally in open court upon all the issues, so that the chancellor had a better opportunity, not only of judging as to their credibility, but was better prepared to draw inferences in respect to the motives by which they had been actuated in conducting the transactions involved than we can be from reading their testimony in the record. But, as it appears in the record, we think it discloses several badges of fraud: 1. The assignment of the patents was, as it was required to be, in writing. It is absolute on its face. By the answers of both parties it is averred that such assignments were made to secure Beidler for advances of money which he had and was to make to Ellithorpe to support him and his family, and enable him to develop and bring out his inventions. And Ellithorpe in his testimony supported that

Beidler v. Crane et al.

theory. But Beidler in his examination before the master testified that there was no previous arrangement in regard to the assignments; that the first he knew about it was, that Ellithorpe brought to him the assignment already made, and he could testify to no arrangement in reference thereto that was made at that time. He, in his oral examination, stated as a conclusion that the assignment was absolute upon the giving up of certain notes of Ellithorpe which he held, but he was unable to give any satisfactory evidence of an agreement to that effect. We think that Beidler must accept the position that upon the theory of the defense the assignment was made as a security. 2. The evidence was of such tendency that the chancellor was justified in finding that attempts were made between Ellithorpe and Beidler to magnify the indebtedness of Ellithorpe for advances by means of fictitious notes. 3. The evidence shows that Ellithorpe controlled the disposition of the patents after they were assigned, organized the corporations and had Beidler assign the patents to such corporations as aforesaid, and although the shares of stock stood in Beidler's name, Ellithorpe not only controlled their affairs but enjoyed substantially all the benefits of their operations. Several badges of fraud were clearly shown. Bump on Fraudulent Con., 3d Ed., p. 41 *et seq.*

But it is said that Beidler did not know that Ellithorpe was indebted to the plaintiffs at the time of the alleged fraudulent transactions. It is true that he would not admit in giving his testimony, any such knowledge, and even denied it. But Ellithorpe's complete insolvency was shown, and it appeared that their wives were related, and that Beidler had had such business relations with both Ellithorpe and his wife outside the transactions in question that he must have known that Ellithorpe was financially worthless, and had creditors whose debts he was seeking to evade the payment of. We think the evidence supports the decree and that it should be affirmed, there being no error of law.

*Affirmed.*